Heaver *v.* Philadelphia Rapid Transit Company.

Argued October 8, 1935.

Be-
fore KELLER, P. J., BALDRIGE, STADTFELD, PARKER,
JAMES and RHODES, JJ.

*Samuel S. Herman,* with him *Bernard J. O'Connell,*
for appellant.

*John Lamon,* for appellee.

OPINION BY RHODES, J., January 31, 1936:

The plaintiff was injured by one of the defendant's
trolley cars, at the intersection of Kensington Avenue

and Somerset Street, in the city of Philadelphia, and brought this action to recover damages for the injuries sustained. The accident occurred on October 17, 1929, at about 7:45 P. M. The case was tried before the court and a jury on February 4, 1935. The jury found in favor of the plaintiff in the amount of $2,500. Defendant's motions for judgment n. o. v. and for a new trial were overruled by the court below, and judgment entered on the verdict. Defendant appealed. The assignments of error are to the refusal of the court below to give binding instructions in its favor, and subsequent refusal to enter judgment notwithstanding the verdict, and to the refusal of defendant's motion for a new trial.

The appellant contends that there was no evidence of actionable negligence on its part; that the plaintiff was guilty of contributory negligence; that the verdict was against the weight of the evidence, and that it was excessive.

The verdict of the jury in favor of the plaintiff is a finding that the defendant was negligent and that the plaintiff had not been contributorily negligent.

The plaintiff, at the time of the accident, was a man sixty-five years of age. He testified that he was walking south on the east side of Kensington Avenue, at about 7:45 P. M., on October 17, 1929. As the traffic signal was red, he stopped at the northeast corner of Kensington Avenue and Somerset Street, the latter intersecting the east side of Kensington Avenue at right angles. The plaintiff had come up Cambria Street to Kensington Avenue and thence down Kensington Avenue on the east side to Somerset Street. There is a double line of car tracks on Kensington Avenue running, in general, north and south. There is also a double line of car tracks on Somerset Street, east of Kensington Avenue. Some of the cars going north on Kensington Avenue turn east into Somerset Street. As the plaintiff approached Somerset Street, he waited until the red light

turned to green and then proceeded to cross Somerset Street. Plaintiff testified that when he was near the middle of the street he observed the car coming north on Kensington Avenue, and that it was slowing up to stop as it approached the intersection of Somerset Street and Kensington Avenue.

What happened from then on is described by the plaintiff as follows: "I proceeded across and I don't know whether they stopped or not. That came around the corner with a rush without ringing a bell or giving notice, and by this time I was on the track. I ran backward to save myself and the car projects over the rail at that point and I could not get back far enough and I was hit by the car and knocked unconscious and taken to the Episcopal Hospital. ...... Q. You proceeded across Somerset Street? A. Yes, and the car came around the corner in a rush and I was almost on the track. I got back as fast as I could but I didn't get back fast enough to save myself from getting hit." On cross-examination plaintiff testified that he believed the car was standing still when he started to cross the tracks, but that it "started up sudden," so that he jumped to avoid it, but the right front of the car hit him. The plaintiff had no knowledge of what occurred thereafter. He was taken to the hospital where he regained consciousness.

A police officer, who was on duty at this intersection at the time of the accident, testified that the defendant's trolley car came to a stop on Kensington Avenue before it rounded the corner into Somerset Street; that when he changed the traffic light from red to green, permitting traffic to go north and south on Kensington Avenue and permitting pedestrians to proceed across Somerset Street in the manner in which the plaintiff was proceeding, defendant's car started around the corner into Somerset Street and across the Somerset Street crossing used by pedestrians. This witness did

not see the accident as his view was obstructed by a car going south on Kensington Avenue.

Defendant's car did not stop, after the accident, until it had rounded the corner into Somerset Street and reached the stopping place for passengers, with the rear end of the car about even with the house line of Kensington Avenue; the car being about 45 feet in length. The motorman testified that he did not see the accident. He first learned of it after he stopped the car on Somerset Street.

The conductor of the car likewise did not see the accident. He stated that, as the car turned around the corner and came to a stop on Somerset Street, he heard that somebody had been hit. He went out and observed the plaintiff being picked up about 3 feet from the southeast curb of Somerset Street, and about 5 feet behind the car after it had stopped. Although he did not see the accident, he further testified that plaintiff "walked right into the right side of the car."

The defendant produced but one eyewitness to the accident—Mr. Porter, a machinist, who was an employee of the defendant company. This witness testified that he was walking immediately behind the plaintiff who was walking north, instead of south as the plaintiff himself claimed, on the east side of Kensington Avenue. The witness was going north towards Cambria Street, which is north of Somerset Street and in the locality from which the plaintiff states that he came south on the east side of Kensington Avenue to Somerset Street. He also said that the trolley car was three-fourths of the way around the curve when the plaintiff walked into the right hand side of it. After the accident, according to this witness, the plaintiff started to walk south on the east side of Kensington Avenue, while the conductor, a witness for the defendant, testified: "I got out and the men helped him [plaintiff] up and they took him from there in a taxicab and he

went to the hospital. I got the taxicab number"; that he did not get the man's name because the men had already put him in the taxicab and sent him to the hospital.

Under these facts we think the defendant's negligence and the contributory negligence of the plaintiff were questions for the jury. The jury accepted the plaintiff's version of the accident as true. We are obliged to read the evidence in the light which best sustains the verdict, in considering defendant's motion for judgment n. o. v.

The testimony in this case is conflicting and cannot be reconciled. To some degree plaintiff was corroborated by the police officer, especially as to the operation of the defendant's car. His story is not improbable, regardless of where the conductor, a witness for the defendant, who did not see the accident, said he saw the plaintiff picked up. Some time intervened after the happening of the accident before the trolley car came to a stop and the witness alighted and saw the plaintiff being picked up near the southeast curb of Somerset Street. If believed, plaintiff's version of the accident warrants a finding in his favor. The defendant's witness Porter testified that plaintiff was going north on the east side of Kensington Avenue, and, after walking into the side of the car, proceeded to return on Kensington Avenue in the direction from which the witness said the plaintiff came. This testimony does not fit in with the testimony of the conductor who said that, after the plaintiff was picked up, some men put him into the taxicab to be taken to the hospital.

The plaintiff had proceeded to cross Somerset Street when his pathway was clear and the traffic signal was in his favor. There was no imminent danger in so doing. He had not only the right, but a superior right to the trolley car, to use the crossing on Somerset Street, under the circumstances. Jacobson v. Palma,

115 Pa. Superior Ct. 401, 175 A. 731. He stopped for the light to change to green and then started across the street, as he had a right to do, before the trolley car entered Somerset Street from Kensington Avenue. He exercised due care before starting across, and the location of the trolley car, as described, was an assurance to him that the latter would not start suddenly and disregard the pedestrians who were properly crossing Somerset Street. It was the duty of the operator of the defendant's car to use such care as the conditions of the streets and the traffic at this intersection required. Schmidt v. Philadelphia Rapid Transit Company, 253 Pa. 502, 98 A. 691.

The plaintiff performed his duty and took due precaution for his own safety before proceeding; and he had a right to assume that the motorman of defendant's car would use due caution in its operation (Murphy v. Philadelphia Rapid Transit Company, 285 Pa. 399, 132 A. 194). It cannot be said that the only reasonable inference to be drawn from the circumstances of this case clearly demonstrates that the plaintiff was guilty of contributory negligence.

The testimony being contradictory as to the circumstances surrounding the accident, as to the want of care on the part of the defendant, and as to the contributory negligence of the plaintiff, the case was properly one for the jury. See Armstrong v. Consolidated Traction Company, 216 Pa. 595, 66 A. 75; Connor v. Pittsburgh Railways Company, 50 Pa. Superior Ct. 629; Galliano v. East Penn Electric Co., 303 Pa. 498, 154 A. 805.

Appellant contends that the court below erred in refusing defendant's motion for new trial on the ground that the verdict was against the weight of the evidence. It is not our province to pass upon the facts, beyond saying that there is evidence to support the verdict. The granting of a new trial on the ground that the

verdict is against the weight of the evidence is peculiarly for the court below, and, where it has refused to grant one for that reason, we will not interfere unless there has been an abuse of discretion. Cullen v. Hartford Accident & Indemnity Co., 108 Pa. Superior Ct. 19, 164 A. 67. Such does not appear in this case.

Appellant also assigns as error the refusal of the court below to grant a new trial on the ground that the verdict was excessive. We will review the question of the amount of the verdict only where it is so grossly excessive as to shock our sense of justice and indicates a clear abuse of discretion on the part of the trial court in refusing to set it aside. King v. Equitable Gas Co., 307 Pa. 287, 161 A. 65. The verdict of $2,500 in this case in favor of the plaintiff is not so excessive as to require us to interfere with the discretion exercised by the court below. The plaintiff was sixty-five years of age at the time of the accident, and was unquestionably severely injured, both externally and internally.

The assignments of error are overruled, and the judgment of the court below is affirmed.